UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| HAI JUNG EMILY KIM, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   NO. 5:23-cv-00048-CHB-MAS |
| | ) |
| AMPLER BURGERS OHIO, LLC, *et al.*, | ) |
| | ) |
|    Defendants. | ) |
| | ) |

**REPORT & RECOMMENDATION**

Defendant Union Insurance Company ("Union") moved to dismiss Count II of Plaintiff Hai Jung Emily Kim's ("Kim") Amended Complaint. [DE 19]. At the Court's prompting, Kim filed a notice of her "formal objection" to the dismissal of the claim without any substantive argument. [DE 23]. Judge Boom referred this matter to the undersigned for a recommended resolution. [DE 24]. Having fully reviewed the record, the Court recommends granting Union's request.

**I.   RELEVANT FACTUAL BACKGROUND**

The facts of this dispute are rather straightforward. On March 3, 2022, Kim entered a Burger King in Winchester, Kentucky owned and operated by Defendant Ampler Burgers Ohio LLC ("Ampler"). [DE 15, Page ID# 136]. While dining, Kim slipped on "a puddle of unknown liquid and/or foreign, transitory substance on the floor on the interior side of the restaurant's front entrance." [DE 15, Page ID# 136].

Kim alleges she was injured in this fall, and asserts a general negligence claim against Ampler. [DE 15, Page ID# 137].

However, from there, Kim's routine Amended Complaint takes a unique turn. Kim alleges, in Count II, that Union violated the Kentucky's Unfair Claims Settlement Practices Act ("KUCSPA") because Union failed to compensate Kim for her injuries as Ampler's insurer. [DE 15, Page ID# 137-38].

## II. ANALYSIS

### A. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 55. Although the court must accept all allegations contained in the complaint as true, the court need not accept "as true unwarranted factual inferences, or legal conclusions unsupported by well-pleaded facts." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010).

### B. REQUIREMENTS UNDER KUCSPA

A violation of KUCSPA "imposes a tall burden of proof on plaintiffs seeking to recover on a theory of bad faith." *Hollaway v. Direct Gen'l Ins. Co. of Mississippi, Inc.*, 497 S.W.3d 733, 737 (Ky. 2016). The Supreme Court of Kentucky has articulated three elements for any bad faith claims under KUCSPA:

2

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Id.* at 737-38 (citing *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)).

For the third element, plaintiff must allege "evidence that the insurer's conduct was outrageous, or because of his reckless indifference to the rights of others." *Id.* at 738 (citing *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997)). "[A]ll elements of the test must be established to prevail on a third-party claim for bad faith[.]" *Id.* at 738.

With the relevant framework in mind, the Court turns to the allegations as set forth by Kim in her Amended Complaint. Kim makes the following allegations:

- Union was provided written notice of Kim's claim against Ampler on March 9, 2022. [DE 15, Page ID# 138].

- Union responded on March 25, 2022, denying liability. [*Id.*]. Kim corresponded with Union, asking for the latter to reconsider its position, but Union affirmed its position. [*Id.* at Page ID# 139].

- Union "has refused to pay the claims of the Plaintiff in this action after being requested to do so; not attempted in good faith to effectuate prompt, fair and equitable settlements of the claims of the Plaintiff; and failed to promptly provide a reasonable explanation of the basis of the insurance policy in relation to the facts or applicable law for denial of the claims". [*Id.* at Page ID# 139].

3

The Court takes these allegations as true. However, giving all deference to these facts as alleged, Kim has not stated a claim against Union for bad faith at this time.

C.     **UNION'S OBLIGATION TO PAY**

First under the *Wittmer* test, Kim is required to establish Union has an obligation to pay Kim for her alleged injuries. Kentucky jurisprudence has defined this element as arising from a judgment against the insured, *United States Liab. Ins. Co. v. Watson*, 626 S.W.3d 569, 575 (Ky. 2021), or an express contractual relationship, *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000).

In *Holloway*, the parties were litigating the consequences of a low-speed automobile accident in an apartment complex. 497 S.W.3d at 734. The Supreme Court of Kentucky emphasized that Holloway had failed to meet the first element given the dispute of fault for the underlying accident. "Both the trial court and the Court of Appeals agreed that fault for the accident itself is debatable." *Id.* at 738. This fact alone foreclosed Holloway's claim against the insurer, Direct General, for bad faith. *Id.* at 739. The Court reached this conclusion even though Direct General had initially expressed some concern that the insured was at fault.

> As for Direct General's initial evaluations and characterizations of fault, we agree that the insurer initially appeared to take responsibility for the accident, and attributed fault to its insured. But we also accept Direct General's proposition that impressions may change as investigations proceed. We will not attribute changing positions as a result of new information or evidence to bad-faith failure to settle claims. Such a stance would stand contrary to our quest for truth and would likely lead to obfuscation in the early stages of accident investigations. Candidness in the investigatory process should be encouraged; a rule disallowing an insurer to evolve its position as the investigation unfolds cuts against our goal of speedy, fair, and transparent investigation. Fortunately, because of the second form of liability invoked in this case, Direct General's early impressions of the case are not dispositive.

4

*Id*. at 738–39. Even where the insurance carrier had initially expressed that the insured may be at fault, the Supreme Court still found that the plaintiff had not established an obligation to pay under *Wittmer* permitting a bad faith claim. *Id*.

Here, Union made no such concession. From the start, per Kim's Amended Complaint, Union has denied that Ampler is at fault. [DE 15, Page ID# 138-39]. Kim does not allege that Union has an obligation, in the sense of a contract or judgment, by which she is due and owing. Rather, she simply maintains that because Ampler is likely at fault, Union must compensate her for her injuries. [DE 15, Page ID# 138-39]. An insurer is allowed to "challenge a claim and litigate it if the claim is debatable on the law or on the facts" without running afoul of the KUCSPA. *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). Maybe Kim will be proven correct one day, but Kim's currently allegations do not provide facts that support the first element.

D.  **UNION'S BASIS IN DENYING THE CLAIM**

Kim must next have alleged in her Amended Complaint that Union lacked a reasonable basis for denying her claim. Kim more specifically cites Union's letter to her counsel denying coverage. The letter, attached the Amended Complaint, provides the following:

> Video surveillance shows your client entering the main door of the restaurant. Directly outside the main door is a floor mat, as well as a wet floor sign as heavy rain was failing outside at that time. Your client is seen walking over the floor mat without stopping to wipe her feet. She takes on step off of the floor mat and immediately slips and falls before she ever enters into the main lobby. There were multiple other customers seen entering the restaurant second before your client, without issue. Based on this information I am not seeing how my insured would be responsible for this fall. My insured took all of the appropriate steps to alert customer of the possibility of slippery

5

> conditions. Your client was aware of the ongoing rainstorm and had a duty to take extra precautions.

[DE 15, Page ID# 142]. Based upon this letter, Kim alleges that Union "failed to promptly provide a reasonable explanation of the basis of the insurance policy in relation to the facts or applicable law for denial of the claims". [DE 15, Page ID# 139]. The relevant question is whether such an allegation is enough.

The Kentucky Supreme Court recently addressed this element in *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579 (Ky. 2021). In *Mosley*, the Supreme Court was reviewing a grant of a motion for judgment on the pleadings where the trial court and appellate court concluded Mosley's bad faith claim had failed as a matter of law. Initially, the Supreme Court affirmed that it construed the second element as meaning the issue of coverage must be "beyond dispute." *Id.* at 586 ("An insurer has an obligation to make a good-faith effort in effectuating 'prompt, fair and equitable settlements of claims in which [its insured's] liability has become reasonably clear[.]' This Court has interpreted 'reasonably clear' to mean 'beyond dispute[.]'") (citing several decisions in support). In other words, "before an insurer can be liable for bad faith, the underlying liability must be established." *Messer v. Universal Underwriters Ins. Co.*, 598 S.W.3d 578, 587 (Ky. App. 2019). As the Supreme Court detailed, Mosley could not make such an allegation as the underlying claims were still in litigation.

The same hold trues for Kim. Although she plainly alleges that Union's denial lacked a reasonable explanation, Kentucky requires more. To meet the second element of *Wittmer*, a plaintiff must allege that the underlying coverage claim is "beyond dispute" and "established". Kim makes no such allegation.

6

E. **UNION'S OUTRAGEOUS CONDUCT**

"The final requirement under *Wittmer* for a third-party bad-faith claim is that the plaintiff show that the insurance company's conduct was outrageous and caused the plaintiff actual damage." *Mosley*, 626 S.W.3d at 588. "The bad faith conduct must go beyond a technical violation of KUCSPA." *Id* at. 586. Kim "must meet a high threshold standard that requires evidence of 'intentional misconduct or reckless disregard of the rights of an insured or a claimant' by the insurance company that would support an award of punitive damages. *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (describing this standard as that of "outrageous" conduct by the insurance company); *United Services Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. App. 2003) (describing the threshold showing as 'high indeed')." *Phelps v. State Farm Mut. Ins. Co.*, 736 F.3d 697, 703 (6th Cir. 2012) (analyzing KUCSPA).

Kim simply does not allege facts that would establish this element. Rather, Kim states that Union's denial of her request for compensation is unreasonable. [DE 15, Page ID# 139]. The only exacerbating evidence she cites is that Union did not conduct a reasonable **second** investigation after she asked for Union to reconsider its position following its initial investigation. [DE 15, Page ID# 139]. Such conduct, even taken as true and accurate, does not allege the "high threshold" indicative of reckless indifference as repeatedly required by Kentucky jurisprudence.

### III.   CONCLUSION

As currently postured, Kim has not alleged the necessary facts to establish a claim under the KUCSPA against Union. Of course, the dispute between Kim and Ampler may change such that she may be able to allege such a claim in the future.

7

As Justice Jackson recently wrote, "[o]ther cases presenting different allegations and different records may lead to different conclusions." *Twitter, Inc. v. Taamneh*, 598 U.S. ---, 143 S.Ct. 1206, 1231) (2023).  At current, however, Kim's claims fail as a matter of law.

Accordingly, the Court **RECOMMENDS** as follows:

1. The Court **GRANT** Union's Motion to Dismiss Count II of Kim's Amended Complaint [DE 19]; and

2. The Court **DISMISS WITHOUT PREJUDICE** Count II of Kim's Amended Complaint.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute.  As defined by § 636(b) (1), Fed. R. Civ. P. 72(b), Fed. R. Civ. P. 72(b), and local rule, within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration.

Entered the 30th day of June, 2023.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY